and as Administrator of the State of Tavis, Ukraine, etc. v. City of Arlington, Texas. Refers from Shelby J. White. Sorry, it's a bit hard to hear Judge Dennis over the TV. May it please the Court? Shelby White for the appellants. This is a classic case of differing versions of events. One that would possibly support a use of deadly force and one that would not. Because there are conflicting versions of events, summary judgment is not proper, plain, and simple. In granting the summary judgment, when we look at the trial court's order, he found first, that Crane's version of events simply wasn't believable. And second, he said that even under Crane's account, Roper was still entitled to qualified immunity. First, I'd like to talk about even under Crane's account, Roper is actually not entitled to qualified immunity. The problem here is that the trial court does not actually accurately analyze what Crane's evidence is and what Crane's version of the events is. The trial court laid out the following facts as quote-unquote true. That's under the record at page 1188. First, he said Crane had been non-con... Oh, Judge Dennis is gone. I'm sorry, what? Judge Dennis's screen is gone now, but... Oh. If he can still hear, I'm happy to continue and we can pause. Judge Dennis, are you able to hear us? Judge? Oh, yes. I can hear you. We have a screen facing up so we can still see it. Perfect. I'll carry on. First, he alleged that Crane had been non-compliant for more than two minutes. He said that Crane was wanted on a parole violation for evading arrest, that Crane refused to turn off the car, rolled up the windows, that there were four occupants in the car, two officers outside the car, the car was on a residential street. So two things. Dennis, this is probably the same for everybody. Keep your voice up. And my southern ear is listening a lot slower than your talk. Absolutely. All right. Four occupants inside the car, two occupants outside the car. Chief Judge Brown used to say sometimes to our distaff members of the bar who took rapidly that you're talking faster than I can think. It's been a problem for me since law school. Actually, high school debates. And last, that Roper was half in the car and half outside the car. And then the trial court said given these facts, it was reasonable to assume that Crane posed a serious threat of harm to Roper or to others. But if we look at the actual facts as laid out in Valencia Johnson's declaration, she says Crane has only been verbally non-compliant. He's never physically non-compliant, and he's never made any occasions that he's going to flee or said that he's planning to flee. Second, that Roper is the one that pulls his weapon, gets in the car, and actually puts Crane in a chokehold and puts the gun against his side. She says that when Crane was shot, his head fell backwards, and that that's after that point the car began to move. So her testimony establishes that Roper put the gun against his side, told Crane to turn off the car, and that when Crane actually reached down towards the ignition to turn off the car, that's when Roper shot him. And that, to me, is the main sticking point in terms of are we entitled to qualified immunity? Well, here's one of the things I'm curious about. I don't know whether it's in the record, and I don't know. So maybe you don't know. But if Crane's version is that Roper has the gun, he can feel the gun barrel against him with the other arm around his neck, and he says, turn off the car. And then he reaches to turn off the car. I guess I'm curious about where the ignition is in relation to where the gear shift is. Yes, and that is in the record. It is early 2000s Crown Victoria, and the gear shift is on the steering column, and then obviously the ignition is behind it. And so what's happened is Roper's created a catch-22 where he tells Crane, turn off the car. He reaches towards the car, and Roper says, I shot him because he reached for the gear shift. So the gear shift—I'm trying to slow all this down for me. So the gear shift is on the steering column. Yes. And then the ignition is on the dashboard. Behind that, yes. And so in terms of proximity, how close are those two to each other? Inches, I would say. All right. And the gear shift would be in front with the ignition right behind it, if that makes sense. All right, makes sense. Those kind of older model cars— What's the car? Crown Victoria, early 2000s model. I'm not sure the exact year. So there's a picture of this in the record? Yes. All right. Yes. So when we look at Valencia Johnson's declaration, she establishes a certain set of testimony. The next issue is that there are obviously gaps in the evidence. The problem is that Judge Pittman takes all the gaps in the evidence and he infers in Roper's favor, and the problem is that he should infer in Crane's favor. So when we look at those, Judge Pittman says that Crane's foot was on the gas, and the implication, therefore, was that he was revving the engine and trying to flee. But when you look at the video evidence and when you compare that with Valencia Johnson's declaration, his foot only goes on the gas once Roper has put him in a chokehold. And so the implication in Crane's favor is that he's obviously bracing his foot because he's trying to relieve pressure on his neck because he's in a chokehold, not that he is pressing on the gas for the purpose of fleeing. That's not the only implication of that evidence, if that makes sense. The next is that Roper testifies that he did know where Officer Bowden was, that he knew that she had come around behind the car and he was concerned for her. If you look at Valencia Johnson's testimony where she says there was no way to know that, and then if you actually look at the video and you compare that to Officer Bowden's declaration where she says, I don't even know why I walked behind the car. I didn't really have a purpose for doing it and I don't remember. There's not really any evidence that Roper knew that she was behind the car and that's why he was trying to, you know, that's why he had the gun against his side and was telling him not to flee. The last one is that... Let me, I just want to understand. So Roper contends that he was seeking to protect the officer who was behind the car... Yes. ...when he shot, when he fired the shot. Yes. Yes. Roper's declaration, timeline-wise, Roper says that he didn't fire the first shot until after the car had been put into gear and moved backwards and then he says, we hit something, I knew we must have hit one of the officers and then you look at his declaration for his reasons, his justification for using deadly force, and he said it was to protect myself that I might fall out of the car and to protect the other officers that were around the car. That kind of goes to my last issue in terms of inferred evidence in our favor. Roper's own admission is that he was capable of controlling the car's gear shift and steering because he testifies that after he shot Crane, he is the one that actually puts the car in neutral and then steers it into a curve to stop it. And so the problem is that Judge Pittman says the only person who could be operating the car is Crane and therefore with his foot on the gas and him steering, his version of events is unbelievable. The issue is that Roper's own admission establishes that Roper was the one that was capable of controlling the car and did control the car. And so the implication is Crane was not necessarily the only person that moved the gear shift and maybe was not the person who moved the gear shift to begin with. So when we take both the facts established in Valencia Johnson's declaration and then we take the facts that are inferred in our favor. Well, the car ended up in reverse. The car moves it, so again, because it is a stick shift, or excuse me, it's a stick shift on the steering wheel. You don't mean it's an annual transmission? No, it's an automatic that goes park, reverse, neutral, drive. And so obviously if you pull it down from park, the first gear you're going to hit is reverse and if there's a foot on the gas, the car is going to go backwards. And then when it's shifted into drive, it continues to go forward because Crane's foot is... Let me ask you a question. As I looked at this film repeatedly, after the officer had gotten in behind and had collared, if you will, the driver, the engine revved and the car did not lunge backwards at that point. The rear wheels were spinning rapidly. Now, if you've got a car sitting there in park and you're cranking it, the foot's on the brake, those wheels are not spinning, right? Yes, so his foot is on the gas. So we know that at the time these shots were fired, the rear wheels were spinning, spinning, spinning. It's only thereafter that the car comes backwards and hits the other officer, correct? Yes. How do you explain the relative positions of the brake, the position of your gear shift knob, and the fact that the rear wheels are spinning simultaneously? So I think... It's a strange car. The reasonable implication is that because Crane has got... Excuse me, because Roper has Crane in a chokehold, he has pressed his foot, not for the purpose of revving the engine, but pressed his foot to relieve pressure on his neck, but he's basically braced himself. His foot's on the brake? His foot's on the gas. And so that's why the wheels are spinning. And so then, when whoever, either Crane or Roper, eventually shifts the car into gear, there is already a foot on the gas, and so the car is going to move. And then because, as I mentioned, it's a... I found no explanation, as I observed it, as to how the car was sitting there, what was containing the car, and allowed the rear wheels to be engaged. If he has a foot on the brake, I guess I'd have to try to... It's possible that he had one foot on the brake and one foot on the gas, and therefore back wheels are spinning and the brakes are engaged so that the car can't move forward or backwards. The other thing I was looking for as I watched that film is the timing and the sequence of the shots and the positions of the car. How would you explain that? How did that... What's the sequence of that? So the sequence of events, according to Valencia Johnson's declaration, is that Roper gets in the car, puts Crane in a choke hold, puts the gun to his side, tells him to turn off the car, and that Crane makes his first move to turn off the car, and at that point he's shot the first time. That after the car is put in gear, then Crane is shot two more times. And so when we look at... What we're looking at is a summary judgment issue. If you look at the video, it doesn't clearly establish the timing of the shots. And then Valencia Johnson's declaration, in terms of how the shots are timed, differs from Roper's declaration. So we run into a classic summary judgment issue, that summary judgment is not appropriate because there's a dispute on the facts, and if we accept Valencia Johnson's version of events, Roper is not entitled to qualified immunity. I'm inclined to agree with you, but what is your full interpretation of the video? I looked at it several times, too. I could not hear any shots. Is there contention that the shots are audible on the video? So what the defense has presented is an expert witness who purports to forensically analyze the video and determine when the shots occurred. The issue is, first of all, that's not confident summary judgment evidence that is able to discount Valencia Johnson's declaration. I'm going to repeat his question, because his question was whether or not anybody's contending that the shot was audible on the video. Yes, I don't think the shot is audible on the video. I watched the video as well. I didn't hear. I think the judge says the same thing, and I think even Roper would contend the original dash cam video, you cannot hear the shot. That's why they presented their expert to kind of analyze and say, here's the timing of the shots. You can hear it. The problem is that, first of all, the expert only identifies two shots, and Roper was actually shot three times, so there is one shot missing from his analysis, and second, that is not summary judgment evidence that is able to. Does anyone have any evidence of where the shots may have, is there, does this video or does any evidence rule out the possibility that this man was shot two or more times after the car took off and went way down the street? You may have to correct me if I misunderstand this question. I think he's asking about is there evidence as to the timing of the shots, and that is what Valencia Johnson's declaration establishes, that he is shot the first time before the car is moving, and I think that the case law, which we laid out in our briefing, which I'll discuss a little bit in my remaining time, the case law establishes that if Crane is trying to comply with Officer Roper's directions, there is no justification for shooting him. If we accept Roper's version of events, which is that the car was moving before he ever got shot, I think we run into a situation that's more analogous to Harmon v. City of Arlington, and he would be justified in deadly force. The problem is Valencia Johnson's declaration says the opposite. She says he was shot the first time before the car ever started moving, before the car was ever put in gear, and he was shot because he tried to comply with Roper's declarations to turn off the car. And in that scenario, there is no justification for deadly force. You cannot put someone in a catch-22 of comply with my directions, but also because you complied, I thought you were moving, and therefore I shot you. And so the cases that we have cited in our brief are DeVille v. Marcantel, which I think is actually factually analogous to what we have here, and then Hanks v. Rogers and Little v. Behar County. I'm running out of time, so I don't really have time to address those cases, but those cases all clearly establish that when the car is— excuse me, when there is no justification for deadly force, you're not allowed to shoot someone who's trying to comply with your directions or specifically who's only been verbally noncompliant, which is what we have here. So you don't have a problem with the gun being drawn in the first place? I do have a problem with that, but I think that—I guess I should say I chose to focus my argument more on the timing of the shots, but there certainly is a contention that jumping in the back of a car and pulling a gun on someone at this point in the scenario where we're only verbally noncompliant, that that is already excessive force, and that eventually becomes deadly force. And I think Little v. Behar County touches on that,  and was he justified in even starting this fight to begin with, if you will. Thank you. Good morning. I'm Jim Jeffrey. I have the honor of representing Officer Roper. I would like to begin with the reason I handed out this exhibit. There's an allegation in the reply brief, and I heard it again here today, that there's no evidence of a physical struggle that occurred between Roper and this crane. But . . . Yes, Your Honor. It looks like this. Judge Dennis, it was faxed, I understand, or scanned and sent through chambers. Excuse me, I thought you meant you handed them out in the courtroom. I'm sorry, I could not hear. I said, you thought you handed them out in the courtroom. I handed to the courtroom deputy this morning, yes, and then it was scanned at about 8.30 and sent to Judge . . . through Judge Dennis' chambers. Apparently, he's at his home because they . . . apparently they didn't get to him. I'm very sorry for that. If I may continue, Ms. Johnson's excerpts in this exhibit from her own declaration says that Officer Roper is inside the car screaming at Tavis, pointing a gun at him and trying to wrestle the keys away from him and get them out of the ignition. And she also says the car did not shift into another gear until Officer Roper climbed over the back of Tavis and started fighting with him. There was a physical struggle inside the car. Let me back up, if I could, counsel, to get the framework for this event going forward. This appears on its face to be a pretextual stop. And by that I mean that if any police departments have a policy of following cars and they see something that they're otherwise suspicious about, whatever, they find some basis for stopping them. It's legal to do that. But as a policy, I think that what they've been finding is that that creates a lot of stops which are escalated into tragedies here. And the basis for stopping this car was that a child threw out a piece of candy wrapper out to one side and they concluded, well, that might be a pipe or smoke and stopped them from that basis. I'm just raising that question with you because when we look at the excessive force situations, the excessive force issues arise sometimes when you make these stops and they look for a warrant and that's what stopped them to look for a warrant. The guy's got warrants and that's one way of enforcing warrants. But it's one that's attended with a lot of risk. Now, that doesn't answer our questions here. But I did want to make that observation because the court sees these cases and there's a lot of study going on about that. So for whatever value that may be, I'd come back to this case. I'm not suggesting that that made this stop illegal. The question has to do with, to me, is the necessity of the police officer at that point, when he did, getting into the back seat of the car and putting the chakehold on. At that point, were you still looking for a pipe of some sort? Or did you discover that it was a child's candy wrapper that had gone out of the car? If I may, Your Honor. Please. By the time Officer Roper arrived on the scene as the third officer, they had already discovered that Mr. Crane was wanted on multiple warrants, at least five, including a warrant for evading and resisting. I understand that. Your stop had enabled you to run a warrant check on the guy, and you guys made the stop. I get that picture. And he, for a period, and again, drawing the court's attention to about a total of a 30-second span, he ignored, Mr. Crane ignored 10 orders from Officer Bowden to either get out of the car or turn the car off. And it was only at that point that Officer Roper opened the back door of the car and entered. He entered the car, and this is, again, key to what happened in the car. It's not just a driver in the car. There's a woman and a child in the back seat. And there's a male passenger in the front seat. That's right. So he gets in the front seat, and he's now sitting virtually on the lap of the woman in the back seat, and then he calls the guy from behind, and he's got a gun. Right. And the driver's passenger in the front seat had been told, turn off the ignition. Mr. Crane told the passenger, don't do that. The passenger obeyed Mr. Crane and not the officer. And one thing about Ms. Valencia Johnson's declaration, she does not in her declaration say that the gear shift was moved by anyone. She doesn't say it was moved by Mr. Crane. She doesn't say it was moved by Officer Roper. And the only evidence of who moved it is from Officer Roper, who swears, I didn't move it. My hand was occupied with my handgun and the sweater around his neck. And there's no evidence from any of the adults inside the car that he didn't do what he said he did. And so I also draw the court's attention to these two pictures that I've got in this demonstrative because there's a claim that Officer Roper didn't know where the other officers were. Well, you can see in the top picture, Officer Bowden's reaching into the back seat of the car and there's three points during that six-second span where Officer Bowden reaches inside the car and touches someone or something and audibly says on the recording, get out, get out, get out. He knew where she was. And Officer Johnson is standing right next to the driver's window while this is going on and he is striking the glass with his baton. And that's the picture shows he's next to the front driver's window striking it with a baton. So when you look at the Supreme Court case Plumoff v. Rickard, where the driver was gunning the car and the Supreme Court recognized only the driver's feet were operating the pedals and that's an indication that the car, the driver is trying to get away, preparing to get away. And there's never been anyone offering any evidence to the contrary that Mr. Crane was the one using his feet at all times to make the car's engine rev, smoke coming out from under it, that the car's wheels are moving. He's the one who did that while you have Officer Roper hanging out of the car. And when you look at this court's published precedent in farming. I saw the film the same way you did. It puzzled me that it was just for a considerable period, several seconds, 10, 15 seconds or more, that his back wheels were spinning rapidly, but the car wasn't moving. And I didn't know, I was just curious about how that was happening. I was trying to figure out, given that, what's going on with the gear shifts and all that stuff. I haven't done that since I was in high school, Your Honor. But if you mash on the brakes. Well, I'm glad you quit. And I met a police officer. I looked at the film last night. I think there's a question. When Officer, what's the female officer's name, Balcom? Bowden, Your Honor. Okay, when she decided to move to the rear of the car, she stopped momentarily and picked up some things from Roper who was in the backseat area. He couldn't have been struggling with the driver of the car at that point. Because he looked like he was handing her his baton and maybe something else before she went on around to the back of the car. Then the car backed over her, went back over her front ways. And then the car took off at a high rate of speed for a great distance while out of sight. Now, leaves open the question of when Mr. Roper started shooting. Your Honor, according to both. I think there's a conflict in the evidence. The plaintiff's evidence would say that he fired a shot before the car moved. His evidence would say that he didn't start shooting Mr. Roper until later. Your Honor, if I may, please. The same four times. So that conflict, I believe, needs to go to trial to be resolved. I think the district judge and maybe a whole bunch of district judges are making this mistake of going into qualified immunity before you apply the summary judgment rules. The Supreme Court corrected us once on this in a case called Tolan v. Cotton, which I read again last night. And we're continuing to let the district courts jump into the qualified immunity and actually find what the true facts are in the case without applying the summary judgment procedure rules. I think this case probably has to go back for a trial on when Mr. Roper started shooting. If I may, Your Honor. Yeah. The evidence is that the shots were fired in a moment's difference. Ms. Johnson says that Officer Roper fired before the car moved. Officer Roper says, I fired after the car ran over Officer Bowden. But the evidence is undisputed that the shots were initially fired during the struggle at the scene. And I think, Your Honor, the law is well settled. You used an officer who's authorized under the Fourth Amendment. The evidence is not undisputed. Your statement said there is a dispute. It may be just for a moment, but that could make a big difference in this case. And if I may explain, Your Honor, the firing of the shots to stop a threat is lawful under the Fourth Amendment analysis. And so if Roper fired after Officer Bowden had been run over, but before she was hit the second time, or even if she was hit the second time, you still have Officer Johnson, who was immediately adjacent to the vehicle, just like or similar to this court's published Harmon case and the unpublished Goldston case, where he is at an immediate risk of being hit. We know that Bowden was at an immediate risk of being hit. And she was hit. And so after firing the shots. Did you watch our whole video? Johnson came after the female officer was run over twice. He comes up from way away across the street. He apparently had vacated the area. He wasn't nearby when that car took off. Your Honor, I would urge you to look at the video. I think that, in particular, the screen captures, which unfortunately didn't get sent your way, shows that seconds before the car moved, Officer Johnson was standing adjacent to the driver's side. If the car had gone forward, he would have been struck by the open door. And he only stepped back after striking the side window two seconds before the car ran over Ms. Bowden. And that's depicted on the video. And again, I could only use screen captures. But all of this happens in a four-second block. And I would urge the court to carefully review that. There's about a 30-second block, but in particular a four-second block, that shows clearly Officer Johnson standing next to the driver's window, striking it with his baton, trying to break it. Two seconds later is when the car backs over Officer Bowden. And he has stepped away from the car as it starts moving backwards, obviously in fear. And so he is in the immediate zone of danger. He's actually as close as Officer Tran was in the Harmon case when Officer Tran, in a published opinion from this court, used lawful force to stop a deadly threat when he was holding onto the side of the moving vehicle. In the Goldston unpublished case from this court, the officer was standing adjacent to the driver's window when it began rapidly accelerating and backed over his partner. And the use of force there was considered reasonable under Fourth Amendment standards. You said Johnson was trying to break the windshield? The side window, Your Honor. The side window. And the purpose of that is? He was going to try to get the keys. They had warned, Officer Bowden had warned, Tavis, if you don't open the window, we're going to have to break windows. Things are going to get crazy. Please just surrender. Please get out. And that's in fact what Officer Johnson did. He was using his baton to strike the driver's side window, trying to get in. And I see that I've run out of time. With the acoustic difficulties, if the court has any other questions, I'd be happy to answer them. Or if you indulge me in another couple of seconds, I could talk about the passenger's claims. But otherwise, I think I'm out of time. Thank you. May it please the Court. I am here just to address the one issue in the case which is unique to the City of Arlington. The City of Arlington, in this case, did not move for summary judgment, but the court dismissed the claims against the City of Arlington nevertheless. The plaintiffs did bring a Monell claim against the City of Arlington. And in the plaintiff's appellate brief, they did not assign any error to the district court's dismissal of the Monell claims against the City of Arlington. And as a result, it's the City's contention that the plaintiffs have waived any error with respect to that issue. In a situation like this, where the district court grants summary judgment basically sui sponte, this court has historically applied a harmless error analysis to determine whether or not to reverse. And typically in those cases, the appellant actually raises an issue, either a procedural issue or a substantive issue, in their brief relating . . . I'm not sure I understand the basis for a Monell claim. Counsel Oppsitt, are you asserting a Monell claim? What is her name? Ms. White, are you persisting in a Monell claim? I can't hear you. Step, please. The Monell claim was dismissed sui sponte because there was no qualified immunity. So we would assert that when the qualified immunity decision is reversed, that we would then have an existing Monell claim. Well, I don't see a Monell claim in this case, frankly. But I don't want to cut you off. My colleagues might say it differently, but I don't see it either. And the point here, Your Honors, is under the harmless error analysis, then the appellant would need to show that they had the basis for a Monell claim. As the court knows, a Monell claim would be based on the existence of some policy which led to a constitutional violation. But ironically here in this case, the appellants actually urge that Officer Roper failed to comply with the City of Arlington's use of force policy. Beginning on page 28 of the appellant's brief, they go into great detail about the city's use of force policy, what it requires, and how in their particular view Officer Roper failed to comply. And if he had complied, they assert, that none of this would have happened. And so it's the city's contention that the failure to brief, the failure to raise an issue with respect to a point of error, and the failure to argue any of the existence of a Monell claim, then results in a waiver. And any error on the district court's part in dismissing that claim would be harmless, and the appellant hasn't done anything really to address the harmless error analysis. In fact, the issue of the dismissal of the Monell claim is not even addressed in appellant's brief, and is only addressed without a citation of any authority in a footnote in the reply. And so the city would ask respectfully that the summary judgment with respect to the Monell claim against it be affirmed, regardless of the outcome of the claim against Officer Roper. If there are any questions, that's it for my argument. Thank you. Ms. White, you have five minutes on the vote. Thank you, Your Honor. I would like to start with briefly addressing the Monell claim. So the Monell claim was dismissed sua sponte by Judge Pittman because, specifically, he had found that the officer was entitled to qualified immunity. He said if the officer has qualified immunity, there is no Monell claim. But he never actually made an analysis as to the underlying merits of the Monell claim. And so when we were asking this court to reverse the trial court's decision, we would reinstate the Monell claim and have the court at least evaluate it on its merits. There are other claims. I wish you would address your other claims. You only have five minutes. Yes. Well, we don't need any more help on that. Yes, and just like I said at the very beginning, this issue comes down to the fact that we are opposed on the facts. I'd like to read directly from Valencia Johnson's declaration. The officer had his left arm around Tavis's neck, and he had his gun in his right hand and was pointing it at Tavis. The officer shouted at Tavis to turn off the car or that he would kill Tavis. Tavis lowered his right hand to turn off the car, and when he did, I heard a shot. That's the dispute, not whether the car was in gear, not the timing of the shot. It is the fact that her declaration establishes Crane moved to comply with Roper's directions, and that's why he shot. And that's the factual dispute. And because we have a factual dispute, as Judge Dennis mentioned earlier, we're looking at a toll-and-be-caught situation, and summary judgment is not appropriate. For these reasons, we would ask this court to reverse the trial court's order granting summary judgment as to the officer and dismissing the claims against the city, reverse the order dismissing the passenger's excessive force claims, and remand this case back to the district court for further proceedings. Thank you for your time, Your Honors. Thank you.